**Opinion filed August 15, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00088-CV
_____

## IN THE INTEREST OF J.O., A CHILD

---

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 17-12-20119**

---

## MEMORANDUM OPINION

This is an appeal from an order in which the trial court, based upon the jury's verdict, terminated the parental rights of the mother and the father of J.O. The father appeals. In his sole issue on appeal, Appellant challenges the factual sufficiency of the evidence. We affirm.

### Termination Findings and Standards

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To terminate parental rights, it must be shown by clear and convincing evidence that the parent

has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

After being instructed in accordance with Section 161.001(b), the jury answered the questions posed in the trial court's charge to the jury and determined that Appellant's parental rights should be terminated. The trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (E), (M), and (Q). Specifically, the trial court found that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that Appellant had previously had his parental rights terminated with respect to another child based on subsections (D) or (E), and that Appellant had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date that the petition was filed. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

On appeal, Appellant challenges the factual sufficiency of the evidence with respect to the best interest finding; he does not challenge the sufficiency of the evidence to support a finding under subsection (E), (M), or (Q). To determine if the evidence is factually sufficient in a parental termination case, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background Facts*

The record reflects that the Department of Family and Protective Services became involved with the family in this case when J.O.'s older brother was born. Both the mother and J.O.'s older brother tested positive for illegal drugs at that time. The mother told the Department that she and Appellant had smoked methamphetamine together the day that J.O.'s older brother was born. The older brother was removed after the family-based safety plan failed. The parents' rights to J.O.'s older brother were eventually terminated, and the final order of termination contained a finding, pursuant to subsection (E), that Appellant had endangered that child.

While the case involving J.O.'s older brother was pending, however, the mother became pregnant with J.O. Ten months after J.O.'s older brother was born,

3

J.O. was born addicted to methamphetamine and benzodiazepines. As a result, he spent approximately three weeks in the NICU at the hospital and was removed from the parents. J.O.'s mother admitted that she smoked methamphetamine while pregnant with J.O. Ultimately, she voluntarily relinquished her parental rights to J.O.

Appellant has never even seen J.O. Appellant was incarcerated at the time of J.O.'s birth and remained incarcerated at the time of the final hearing on termination. Appellant's legal troubles began when he was eleven years old and continued into adulthood. He was thirty-three years old at the time of trial and had been incarcerated most of his adult life. Appellant admitted to numerous arrests and convictions for various offenses, including criminal mischief, theft, burglary of a building, unauthorized use of a motor vehicle, bail jumping and failure to appear, evading arrest (multiple), assault, interference with an emergency request, driving without a valid license, assault of a family member, and aggravated assault with a deadly weapon. On February 2, 2018, Appellant's community supervision was revoked, and he was sentenced to a term of confinement for four years for the offense of assault family violence, with previous convictions. Furthermore, the mother had told the Department that Appellant was violent toward her, that he used methamphetamine, that he provided methamphetamine for the mother to use, and that she "really never did meth before she met him."

Appellant did not want his parental rights to be terminated and believed that he would be a good father to J.O. In support of this assertion, Appellant testified that, in the past fifteen months, he had "made a complete change around," had completed courses as requested by the Department, and was attending college while he was in prison. Appellant also testified that he would never hurt his son and that he would "be there for him." At trial, Appellant acknowledged that he had a thirteen-year-old son with whom he had spent little time because he was incarcerated for

4

most of that child's life. Appellant testified that he and his thirteen-year-old son were "close" nonetheless, but Appellant agreed that his incarcerations had "probably" affected that son.

The conservatorship supervisor, the caseworker, the child's guardian ad litem, and the child's attorney ad litem believed that termination of Appellant's rights would be in the best interest of J.O. The conservatorship supervisor indicated that Appellant's proclivity for criminal conduct endangered J.O.

J.O. had been placed in foster care after he was released from the hospital. Those foster parents were able to provide special care for J.O.'s medical conditions, which were attributed to the mother's use of methamphetamine while she was pregnant. J.O. remained in the same foster home at the time of trial; he was fifteen months old at that time. The Department's plan for J.O. was adoption by the foster parents, with whom J.O. was very bonded. The foster mother testified that she loved J.O. and that she and her husband wanted to adopt J.O. The record reflects that all of J.O.'s needs were being met by the foster parents and that the foster parents would be able to meet any medical needs that might arise in the future.

*Analysis*

We have considered the record as it relates to the desires of the child (who was too young to express a desire), the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of Appellant and of the persons with whom the child was placed, the Department's plans for the child, Appellant's inability to provide a safe home for the child, Appellant's use of methamphetamine with the child's mother while she was pregnant, Appellant's providing methamphetamine to the mother, Appellant's commission of domestic violence against the child's mother and others, and Appellant's extensive criminal history. The trier of fact could reasonably have formed a firm belief or conviction, based on the clear and convincing evidence

5

presented at trial and the *Holley* factors, that termination of Appellant's parental rights would be in J.O.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Therefore, we hold that the evidence is sufficient to support the finding that termination of Appellant's parental rights is in J.O.'s best interest. *See id.* We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the trial court's order of termination.


JOHN M. BAILEY

CHIEF JUSTICE


August 15, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.